ORIGINAL

Approved: _____
NI QIAN
Assistant United States Attorney

Before: THE HONORABLE JAMES L. COTT
Chief United States Magistrate Judge
Southern District of New York

19MAG 8574

- - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA : **SEALED COMPLAINT**
:
- v. - : Violation of
: 18 U.S.C. §§ 641 & 2
PETER FAUCETTA, Sr., :
: COUNTY OF OFFENSE:
Defendant. : NEW YORK
:
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

JANELL BORRISON, being duly sworn, deposes and says that she is a Special Agent with the United States Social Security Administration, Office of Inspector General ("OIG"), and charges as follows:

COUNT ONE
(Theft of Government Funds)

1. From at least in or about November 2014 up to and including in or about December 2016, in the Southern District of New York and elsewhere, PETER FAUCETTA, Sr., the defendant, did embezzle, steal, purloin, and knowingly convert to his use and the use of another, and without authority, did sell, convey, and dispose of records, vouchers, money and things of value of the United States, and a department and agency thereof, to wit, the United States Social Security Administration, which exceeded the sum of $1,000, and did receive, conceal, and retain the same with intent to convert it to his use and gain, knowing it to have been embezzled, stolen, purloined and converted, to wit, the defendant used for his own benefit Social Security benefits that did not belong to him.

(Title 18, United States Code, Sections 641 and 2.)

1

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2. I have been employed as a Special Agent with the OIG for over 10 years and have participated in the investigation of this case. This affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. Based on my review of records maintained by the Social Security Administration (the "SSA"), I have learned, among other things, that:

a. From in or about 2009 up to and including in or about 2016, PETER FAUCETTA, Sr., the defendant, was appointed as a "representative payee" for his minor son (the "Minor Son") and began to collect Social Security benefits (the "Benefits") on the Minor Son's behalf. Under Title 20, Code of Federal Regulations, Section 416.640, these Benefits were intended to be used only to pay for the Minor Son's expenses—such as food, shelter, medical and dental care, education, and clothing. Furthermore, under Title 20, Code of Federal Regulations, Section 416.645, any remaining money must be saved on the Minor Son's behalf.

b. As a representative payee for the Minor Son, FAUCETTA was required to submit a representative payee report to SSA each year to account for how the Benefits were used.

c. Each year between 2009 and 2016, the SSA sent approximately $13,653 to $15,300 in total Benefits to FAUCETTA as representative payee for the Minor Son.

d. For the years 2009 up to and including 2013, FAUCETTA submitted representative payee reports to the SSA in which FAUCETTA stated that he had saved the entirety of the Benefits that he had received for the Minor Son. According to

2

the representative payee report for the year 2013, on December 31, 2013, approximately $70,901 in Benefits for the Minor Son were saved in a bank account in the name of FAUCETTA as custodian for the Minor Son ("Bank Account-1").

    e. FAUCETTA failed to file a representative payee report for the Benefits that he had received for the Minor Son in 2014.

    f. On the 2015 representative payee report, FAUCETTA represented that he had spent approximately $10,000 of the approximately $15,360 in Benefits that he had received for the Minor Son in 2015, and saved approximately $5,000.

    g. On the 2016 representative payee report, FAUCETTA represented that he had spent approximately $10,360 of the approximately $15,360 in Benefits that he had received for the Minor Son, and saved approximately $5,000.

    h. From 2009 through 2016, FAUCETTA received a total of approximately $116,729 in Benefits for the Minor Son. Of this sum, FAUCETTA reported spending a total of approximately $20,360 in permissible expenditures. The remaining balance of approximately $96,369 should have been saved for the Minor Son.

    4. Based on my review of bank records, I learned that from in or about 2009 up to and including December 2015, the SSA deposited approximately $87,000 in Benefits into Bank Account-1. From at least in or about November 2014 up to and including in or about October 2015, approximately $82,000 in checks written to PETER FAUCETTA, Sr., the defendant, were withdrawn from Bank-1 and deposited into various bank accounts either in the name of FAUCETTA or controlled by FAUCETTA. By December 31, 2015, only $5,180.72 remained in Bank Account-1. Specifically, I learned the following regarding Bank Account-1:

    a. Between 2009 and December 2013, Benefits for the Minor Son were deposited into Bank Account-1. These deposits were the only transactions in Bank Account-1. On December 31, 2013, Bank Account-1 contained $70,523.18, consisting of Benefits saved from 2009 through December 2013, including any interest.

    b. In 2014, Benefits for the Minor Son continued to be deposited into Bank Account-1.

3

    c. In or about November 2014, a check in the amount of $14,200 written in the name of PETER FAUCETTA, Sr., the defendant, as custodian for the Minor Son was withdrawn from Bank Account-1 and deposited into a bank account in the name of a limited liability company ("LLC-1") ("Bank Account-2").

    d. In or about December 2014, a check in the amount of $10,000 written in the name of FAUCETTA as custodian for the Minor Son was withdrawn from Bank Account-1 and deposited into a bank account in the name of FAUCETTA ("Bank Account-3").

    e. In January and February 2015, Benefits for the Minor Son continued to be deposited into Bank Account-1.

    f. In or about January 2015, two checks totaling the amount of $30,000 written in the name of FAUCETTA as custodian for the Minor Son were withdrawn from Bank Account-1 and deposited into Bank Account-2.

    g. In or about March 2015, a check in the amount of $15,000 written in the name of FAUCETTA as custodian for the Minor Son was withdrawn from Bank Account-1 and deposited into Bank Account-2.

    h. In or about July 2015, a check in the amount of $5,000 written in the name of FAUCETTA as custodian for the Minor Son was withdrawn from Bank Account-1 and deposited into a bank account in the name of FAUCETTA ("Bank Account-4").

    i. In or about August 2015, a check in the amount of $3,000 written in the name of FAUCETTA as custodian for the Minor Son was withdrawn from Bank Account-1 and deposited into Bank Account-4.

    j. In or about October of 2015, a check in the amount of $5,000 written in the name of FAUCETTA as custodian for the Minor Son was withdrawn from Bank Account-1 and deposited into Bank Account-4.

    k. On December 30, 2016, Bank Account-1 had a balance of $5,334.73.

    5. Based on my review of tax records, I learned that PETER FAUCETTA, Sr., the defendant, is the sole member and owner of LLC-1.

6. Based on my review of bank records, I learned that from in or about November 2014 through in or about March 2015, Bank Account-2, which is in the name of LLC-1, received approximately $59,200 in checks from Bank Account-1. In or about March and April 2014, Bank Account-2 also received approximately $2,560 in Benefits for the Minor Son directly from the SSA. PETER FAUCETTA, Sr., the defendant, used the Benefits to make cash withdrawals, make payments for expenses associated with a credit card ("Credit Card-1"), and to pay for meals at fine dining restaurants and car payments on a Mercedes Benz. Specifically, I learned the following regarding Bank Account-2:

    a. On January 1, 2014, Bank Account-2 had a balance of $109,770.87.

    b. In or about November 2014, a check in the amount of $14,200 issued from Bank Account-1 was deposited into Bank Account-2.

    c. In or about January 2015, a check in the amount of $10,000 issued from Bank Account-1 was deposited into Bank Account-2.

    d. In or about February 2015, a check in the amount of $20,000 issued from Bank Account-1 was deposited into Bank Account-2.

    e. In or about March 2015, a check in the amount of $15,000 issued from Bank Account-1 was deposited into Bank Account-2.

    f. In March and April 2015, approximately $2,560 in Benefits for the Minor Son were deposited into Bank Account-2.

    g. On December 31, 2015, Bank Account-2 had a balance of $162.64.

7. Based on my review of bank records, I learned that in or about December 2014, a check in the amount of $10,000 issued from Bank Account-1 was deposited into Bank Account-3, which is in the name of PETER FAUCETTA, Sr., the defendant. FAUCETTA used the $10,000 to make payments for expenses associated with Credit Card-1 and to make cash withdrawals.

8. Based on my review of bank records, I learned that in or about April 2015, PETER FAUCETTA, Sr., the defendant,

5

opened Bank Account-4 in his own name. From in or about April 2015 up to and including December 2016, a total of approximately $25,600 in Benefits for the Minor Son were deposited directly into Bank Account-4. A total of about $13,000 in checks issued from Bank-1 were also deposited in Bank Account-4. All the Benefits deposited into Bank Account-4 were spent on expenses such as meals at fine dining restaurants, a gym membership, dry cleaner fees, and car repairs. Specifically, I learned the following regarding Bank Account-4:

   a. On April 10, 2015, the date of the account's creation, Bank Account-4 had a balance of $3,316.32.

   b. In or about July 2015, a check in the amount of $5,000 issued from Bank Account-1 was deposited into Bank Account-4.

   c. In or about August 2015, a check in the amount of $3,000 issued from Bank Account-1 was deposited into Bank Account-4.

   d. In or about October of 2015, a check in the amount of $5,000 issued from Bank Account-1 was deposited into Bank Account-4.

   e. By December 31, 2016, Bank Account-4 had a balance of $3,010.23.

   9. Based on the foregoing, between November 2014 and December 2016, PETER FAUCETTA, Sr., the defendant, spent approximately $110,000 of the Benefits intended for the Minor Son. Based on the fact that FAUCETTA reported spending only approximately $20,360 on permissible expenditures during the same time period and the nature of the expenses paid for from FAUCETTA's various bank accounts, I believe that FAUCETTA used more than $1,000 of the Benefits intended for the Minor Son to pay for FAUCETTA's own personal expenses.

   10. On or about January 9, 2017, I interviewed PETER FAUCETTA, Sr., the defendant, at his residence with his attorney present. I identified myself as a Special Agent with OIG, and FAUCETTA agreed to be interviewed. During this interview, although FAUCETTA stated, in sum and substance, that he used the Benefits to pay for the Minor Son's expenses, such as clothes,

camps, and a nanny,[1] FAUCETTA also admitted to using the funds in Bank-1 to pay for his own monthly expenses.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of PETER FAUCETTA, Sr., the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

JAMES BORRISON
Special Agent
Social Security Administration
Office of Inspector General

Sworn to before me this
12th day of September, 2019.

THE HONORABLE JAMES L. COTT
United States Magistrate Judge
Southern District of New York

---

[1] PETER FAUCETTA, Sr., the defendant, made a similar statement during a later interview on February 23, 2017 by SSA claim representatives.